Thank you, Your Honor. If it pleases the court, Scott Mendeloff on behalf of the appellants. This appeal addresses whether the Bankruptcy Court properly denied leave to amend when it dismissed the first amended complaint. My plan is to make a very brief opening statement and then answer any questions the court has and reserve the rest of my time for a reply. In terms of my opening remarks, I know first that the Bankruptcy Court's denial of leave to amend is due an extraordinary deference in this case above and beyond abuse of discretion because it occurred after the appellant, excuse me, the appellee had already received leave to amend once before. The Bankruptcy Court's denial of leave to amend was not error at all, let alone gross abuse of discretion for two appellants to properly file a motion for leave to amend in the first place in the in the court, in the trial court. Scott Mendeloff Can I ask about that first question, the first argument, because you spent a fair bit of time on these two procedural arguments up front in your brief. But those didn't even carry the day before the Bankruptcy Court. So if you're arguing that we need to, you know, give deference to the or why should we affirm, I guess, in your position, the Bankruptcy Court based on reasons that it didn't even rely upon in denying leave? Because, Your Honor, as our brief indicates, opening brief, the court can affirm based on any basis on any basis in the record, not just what the court rule, not just what the trial court rule. I understand that, but wouldn't the court have, by getting to futility, didn't the Bankruptcy Court effectively reject the arguments you raised below about the procedural errors? And if that's true, as you pointed out, the Bankruptcy Court is due deference. Why would we step in and affirm on those alternate grounds when the Bankruptcy Court didn't even rely upon that? Well, in addition to the fact that the appeal is, the Bankruptcy Court ruling is entitled to be affirmed on any basis that's in the record, I should, I should add that the Bankruptcy Court did reference a number of the things that we are indicating. The only thing the Bankruptcy Court didn't address is the failure below, of the, of the trustee to file a proper notice of motion to a motion to amend. That was the only thing that the Bankruptcy Court didn't address. And in our view, it is a proper element of this case by failing to meet that standard, they failed to meet rules 707.1B, the federal rules of civil procedure and local rule 10-1, both of which have been upheld by other courts in the ninth circuit as basis to affirm failure of leave to, or denial of leave to amend. And, in our view, those places in and of itself should be sufficient, this record in light of the standard here, that is, did the court apply the proper standard and was the ruling outside of the record, illogical or implausible? None of my, none of which are in that situation. So I cut you off on, okay, go ahead to your second one. Yeah. Okay. So our second point is that this court generally upholds denials of leave to amend based on a review of five factors. The ninth circuit has repeatedly upheld denials of leave to amend if there's a showing of one to two of those factors. Here, the trustee or the appellees have waived on two factors, and we believe the trial court properly found the existence of the futility, but it's not necessary that the court did that. So because there is already waiver on two factors that are, and two factors are enough, we think that in either because of that, or because of the fact that this was never filed appropriately in the first place, this simply cannot be an abuse of discretion. So can we get to futility? Cause that seemed to be what the bankruptcy court generally relied on, and is perhaps your strongest argument. But while we defer to the bankruptcy court, we don't defer if it made a legal error, and I'm concerned about whether the bankruptcy court properly considered whether there was any plausible basis for the unreasonable small capital test to I think you sort of allude to that in your brief. Why isn't that legal error in and of itself to reverse the bankruptcy court? Well, your honor, if in fact, the bankruptcy court did consider that specifically referenced it in connection with its evaluation of the ruling, of the position below, and that you can find that in our brief on, I think it's page 28 of our brief, but I think you're right as to part of that test, but not as to all of the tests for unreasonable small capital, unreasonably small capital. Did anybody raise unreasonably small capital at all? Yes, your honor. The court, the bankruptcy court raised it, and. In any pleadings filed by the trustee, did they ever raise the small capital test? No, they didn't. And the bankruptcy court specifically asked for that. And the trustee did not raise it. Additionally, I should note that the issue was also brought up in our briefs which the court under the Meltzer case can consider in connection with this. So this was squarely before the court and there was notice to the bankruptcy, pardon me, to the bankruptcy trustee on this. The bankruptcy court of appeals, I think just missed this issue. When they said that that wasn't addressed, it's just not accurate. It was, and it's evident at two different places in our brief, page 28 and page seven of the, page 28 of the reply and page seven of our opening brief. If Judge Gould, if I could interject a question, I was under the impression that under, under our president, under our president, in a case called Inretractable, we review the BAP De Novo and also review the decision of the bankruptcy court. I got the impression, Mr. Mendeleff, that you didn't agree that we review the BAP De Novo, but am I wrong on that? No, we believe that the BAP decision should not be considered at all.  You should review the trial court decision De Novo. Okay. I guess the other question I had was about some of the new facts that became available. The first question is, can we even consider at this point, any of the allegations that apparently have come out in the SEC filed complaint that, you know, was filed in, do I have it right? 2019 or? During the 2019. Yeah. So do we, can we even consider that at all? Because that came out after the motion for an amendment. And if we can consider it, to what degree can we consider it? Our opinion is you should not consider it. We filed a motion opposing the attempt by our, the appellees to ask you to take judicial notice. We think you can't consider it for, because they didn't apply the correct standard, which is an extraordinary circumstances test. Well, I mean, I think there's two questions on that. I would be careful on your side to roll it into your request for judicial notice, because we can still take judicial. It seems like we can take judicial notice of it, but the better question is, is it relevant to, can we consider it? And is that, I'm just asking a threshold question. The fact that that came out in 2019, just because it came out after the amendment was requested, is that off the table for that reason alone? Yes, I was good. That was the next point I was going to raise. It's hard when we only have a few seconds here, but that was exactly what I was going to raise. It would be improper to, you could not base error at the trial court level on something that came up a year after the trial court ruled. But in addition, we cited a whole series of cases that indicate that it's improper to try to Jerry bootstrap onto an SEC complaint when you haven't done your own evaluation of the facts and the law and you're lying. Well, were those, and I understand we've got, hopefully Judge Gould will indulge us all, but were these facts in the SEC complaint known to the trustee at the time the amendment was requested? Yes. And our argument is that they were known. The trustee had 2004 discovery extensively prior to filing the complaint in the first place, including deposing my client. They had access to all of the records in connection with the case. And this is detailed, addressed in our opposition to Judge Gould. Right. But I guess one of the concerns I had with that argument, and maybe you win, you know, either way this goes, but your argument that we shouldn't be able to rely upon it because they haven't done their own due diligence seems inconsistent with your argument that you just which is, well, they had it before them. I mean, they either had it before them and didn't use it, which is one reason to reject it, or they didn't have it before them, never did the due diligence. And then maybe, or their own event, maybe it should be rejected. But those seem alternative and inconsistent theories. Would you agree? Yeah, they're alternative. But there's a reason we were making that argument. If they have it before them, prior previously, then they can't meet the standard they have to to be able to get it in as a judicial notice. It has to be extraordinary circumstances for you to take judicial notice at the appellate court level. They can't say there's extraordinary circumstances if they had access to all this before, and they just didn't do their homework. Mr. Mendoff, I see you're roughly two minutes over your time, which is entirely correct to give a any judges questioning. But I'm going to ask you to wrap up your initial argument, and I'll give you an extra two minutes for a rebuttal argument, so you can plan on that. Okay, well, thank you very much. In light of that, Your Honor, the only thing I would say is that regarding this last point as to fusility, I think it should not be missed that the appellees specifically state in their brief that but for the SEC complaint, they did not have a basis for adding any more facts to this case. Thank you, counsel. So why don't we proceed now to Mr. Romero's argument.  May it please the court. My name is Troy Romero, and I'm appearing on behalf of the Chapter 11 trustee, Bradley Sharp, regarding the bankruptcy of Blue Earth Inc. Your Honors, as the bankruptcy appellate panel framed the issue is the way we believe this court should frame the issue. And that is, did the bankruptcy court abuse its discretion when it denied the trustee's motion for leave to amend? I think that the bankruptcy appellate panel did a very good job of going through and analyzing it. Obviously, they made a number of statements that were not positive toward my client. But in the end, they came down on the decision that it was an abuse of discretion to not allow leave to amend. And I think all parties agree that the form and factors apply. I think we all agree that Johnson versus Buckley cited by the BAP is the correct case. And I think we all agree that there has been no finding of dilatory conduct or bad faith or any. So it really gets down in the de novo review of this panel. Counsel, you can see that your first two complaints did not have specific enough factual details in them. You're not, you're not quarreling with the BAP's conclusion or the bankruptcy court's conclusion that you did not plead the requisite facts. Your Honor, no, I respectfully do believe that the BAP made an error there. The reason being is. It took you 28 pages to make it then. Yeah, I concur. But the reason, Your Honor, that we disagree is because we have a difference of opinion on the interpretation of what happened. As the court will know, the BAP said, I recognize the trial court gave the trustee some information. In fact, using the BAP's own words, the bankruptcy court mixed up the 548 analysis and only did two pieces, cash flow and balance sheet and missed. Would the trustee ever raise the unreasonably small capital issue ever? We would argue that not as it relates to the actual citation of Roman numeral big two. He never even said the word. We did not say those two words. What we said, Your Honor, is in the facts. We set forth a series of facts that the company was not able to make its payments in the ordinary course of business payroll. Your Honor, two weeks before this happened, payroll was not met. And it had to be paid for by an officer loaning money to the company. And so we believe that we made enough arguments under 548 to withstand a motion to dismiss. Well, how many how many amendments would you like to get? I mean, can you leave out facts and get a first amendment and then leave out facts again and get a second amendment and then get a third amendment? At some point, it seems to me your pleadings have got to stand up by themselves. Your Honor, I do not disagree that the fifth standard of the form and factors is where the complaint has been previously amended multiple times. We have only had one first amended complaint. You had a second amended. We did not, Your Honor. We had two complaints. We had a first amended complaint where the court had told us I'm OK with most of your factual allegations. There's a few more that I need a little more detail on, which we made. Then the court reversed its course from our perspective and ruled differently. The way the BAP characterized it is the BAP said the bankruptcy court and the parties made an error in saying that under 548, there were only two bases for insolvency, balance sheet and cash flow. But there was a third undercapitalized. Is the court required to go down the list and come up with theories that the parties don't even approach? No, Your Honor. No, Your Honor. I don't think so. But what I do think is that when you're talking about notice pleading, you're putting them on notice of your general allegations, which we made under 548. We made factual allegations and we made inferences and we made legal conclusions. We think that that is sufficient. But the bankruptcy court and the BAP said, no, it is not sufficient. But where they got to the issue was futile. And that's the real issue here is what is the futility of this? And that's the only reason we submitted the SEC complaint, just to show it. If you look at the way the BAP looked at it, the BAP didn't need the SEC because they found a plausible basis for pursuing the claims. The SEC complaint only provides the court information that came in after everything to show that it isn't just the trustee making something up, but rather that there really are incredible facts. The Blue Earth was falsifying their financial statements, both on the asset side and on the liability side. But can I ask about that? Because I wasn't sure how far the SEC complaint got you towards the 548 legal requirement, because you ultimately, as I understand it, have to show that they had small, you know, there wasn't enough capital to be able to meet their obligations. Now, you you have suggested here that they weren't going to be able to meet payroll. But I thought there was I thought below when you were asked this by the district court or excuse me, by the bankruptcy court, that the response was, well, they couldn't meet their obligations without borrowing more funds. And I was a little I so I'd like you to address that, because my understanding is that they can borrow more funds and meet obligations than they wouldn't meet that obligation. And that would seem to support the legal conclusion that the bankruptcy court made that this would be futile. And so what is the nature of that? Could they meet it with borrowed funds or not? Well, your your honors or your honor, I one will never know. Right. In other words, it calls for speculation how you can do it. All we can do is look at empirically what happened that they had to borrow four million dollars, which they basically sold. They're not borrowed, but they had to acquire four million dollars to meet obligations. Within one week, these transactions were flipped and all four million dollars of that money was gone. In other words, they had to go borrow five million the next week just to be able to pay back the appellants their money and give them extra kickers to be able to do that. To me, especially in a motion to dismiss where all the inferences should go in the favor of trustee, that's enough to show these guys can't make it. Well, the ability to borrow money, though, is not will not support a claim that they were left with unreasonably small capital. If you can borrow the money and it may not have lasted very long, but it doesn't cover the situation of cleaning. Well, your honor, if you look at what the BAP said, the reason the BAP found that it was not futile, right, was because they said in analyzing this situation, I believe the trustee or we the. We believe that the trustee can allege facts to show that it was undercapitalized when the deal came down. In other words, a debtor can be a debtor can be solvent, your honor. But if after the transaction, they are basically, you know, for all practical purposes, they're going to die. And that's what is in the complaint. We basically said, look, they were living on life support. They couldn't do this. We don't know why it happened. We don't control any of these people. But why within one week would you go from having four million dollars of capital to run your company to the next week, have five million dollars of debt and be on life support? It makes no sense, especially when you're borrowing money to be able to cover payroll. Well, you could not satisfactorily allege that there was a cash flow insolvency and you agreed that you didn't have any additional facts. And if you don't have cash flow insolvency, now you come around and say, well, we've got small capital testimony. What was never alleged? I mean, I don't know what to expect from the manner in which this thing developed. Your honor, I think the BAP did a good job. I mean, I'm obviously disappointed in this. But by saying, look, when it comes to 548, there are three separate bases. The trustees should be able to allege facts on all three bases. It hasn't happened. The bankruptcy court confused the issues. The parties confused the issues. The bankruptcy court gave some information to the trustee that caused it to believe it didn't need to address any further issues. If the court looks at the record, you'll see in the first hearing on the first amendment complaint, the court literally said, we're OK with one of those forms of insolvency. You don't need to go there. So there was no additional. In my opinion, the trustee should be given one last opportunity to file a second amended complaint. If you look at the prongs under the Ninth Circuit, it uses the word amendments with the plural. The only case cited by the appellants is a case that was unpublished. I think it was called Smith, and it had to do with a fee hawk claim. Everything else is two amendments or three amendments. And some of them are like three or four years after it started. There's no prejudice here, your honors, by allowing the trustee to file one more time. No discovery conference, no discovery, no trial, nothing like that. The trustee is doing the best he can with the very limited information he has to try to allege a complaint. This is a very unique situation because as the courts, if the courts decide to take judicial notice of the STP complaint, this was fraud, serious outright fraud. Perpetrated by these blue earth people. The trustee can't be expected to know all the facts. How far into the future can you go? It's over a year from the time of the order of the bankruptcy court. June of 2019 comes the complaint and the filing of the bet is October of 2019. I mean, nothing would ever be final if you could just keep on going. And your honor, I'm not advocating for that. I'm not advocating for what I believe the Ninth Circuit stands for, which is you should be entitled to two amendments. At least it's plural because we've only had one amendment. And while I understand the appellants are arguing that there could be some procedural machinations, you could have attached a second draft to the motion for reconsideration. Those arguments were all rejected by the back and property. So the test is not whether or not you could have done it again. Was there a second amendment? Was there a third amended complaint? Were those also rejected? And that's not the case. We've only had one first amended complaint. We believe the back correctly determined that it was not futile to be able to do it. That there was no undue prejudice and that there haven't been multiple amendments. And so all three of those form and prongs, we believe the evidence support the finding that this court should have to affirm the back. Thank you. Okay. Thank you, Mr. Romero. Now, Mr. Mendeloff. Yes. Your Honor, there's a few things that were raised here that I need to address. First of all, the BAP did not rule on the failure of the trustee to file a motion to amend in the first place. That was not before the bankruptcy court. They didn't reject that. They didn't rule on it. Secondly, this allegation that the Ninth Circuit requires multiple opportunities to amend before you are entitled to get that prior opportunity to amend prong is just wrong. We cited eight cases, eight Ninth Circuit cases that made very clear one prior opportunity to amend is enough. So that statement is inaccurate. And in fact, the two cases that they did cite, Telesaurus and Sonoma County, neither of them say that either. Telesaurus talks about several opportunities to amend, but in there, there was no second opportunity to amend. Can I just ask in response to this, what is the undue prejudice? I mean, well, first off, what deference do we owe? I know you argue it's abuse of discretion. And there seemed to be one sentence in the banker that there would be undue prejudice. But what is the undue prejudice to your client? They're already fighting an SEC complaint. All these facts seem to be tied up into it. Why would there be prejudice in allowing this to go forward? We're not involved in the SEC case at all. Our client are the investors that invested in the company and that were then removed after two weeks. So we're not involved with that. Let me say in terms of that, by the way, this idea that somehow there was something wrong with the two-week turnaround on these investments. Let me give you the court some background very quickly. The long-term financier of the debtor here is the company, it's called Jackson. And it is the company that's one of two entities on the bankruptcy trust that runs this bankruptcy from that side at this time. Jackson found out that the company had obtained financing in the form of a note from our clients and objected to it and required the company to back out of the arrangement. It was Jackson that then provided the additional financing right afterward that we heard about, the $5 million of the financing. Thereafter, Jackson provided additional financing. Fast forward five or six months later, now there's a bankruptcy and Jackson is driving this attempt to go back to our clients and make our clients put in $2 million for a transaction that Jackson itself had driven. So to somehow cast aspersions on our clients in terms of this short-term exchange, when in fact, it's the entity that's driving the bankruptcy trust fee right now that's the one that caused it is in our view, very improper. Counsel, if the court were to rule that amendment is proper, it would not be casting aspersions on your client or anyone. It's up to a proceeding. Yes, I understand. To address Judge Nelson's comment, in fact, we indicated and the court indicated below that we had engaged, we had been required to respond to multiple rounds of briefing, including many, many instances in which there were arguments that had been waived that are then brought up later. We have a footnote that details all of that. And the court's determination that that was sufficient to establish a prejudice has been upheld by many different Ninth Circuit cases. So I guess the standard of abuse of discretion, we think it more than meets that. Thank you, Counsel. Let me say that I wanted you to be able to respond fully to Judge Nelson. And if he or Judge Kelly have other questions for you, you could proceed. But otherwise, we should try to wrap this up. And thank you, Counsel. So unless I hear further from Judge Nelson. No, no other questions. Okay, thank you. So we'll ask the clerk to please submit intercoastal. And we thank the counsel on both sides of the case for their excellent arguments. And the parties will hear from us in due course. Thank you, Your Honors.
judges: Kelly, Gould, Nelson